ALICIA CHANG[1] *vs.* HARVARD VANGUARD MEDICAL ASSOCIATES, INC., & others.[2] No. 09-P-1489. September 15, 2010. *Medical Malpractice,* Expert opinion, Tribunal. *Practice, Civil,* Summary judgment, Appeal. *Evidence,* Expert opinion.

In this medical malpractice action, it is alleged that the minor plaintiff was injured by exposure to chemotherapy administered to her mother following the defendants' delayed diagnosis and treatment of the mother's ovarian cancer. A judge of the Superior Court allowed the defendants' motion for summary judgment.[3] We reverse.

[1]By her mother and next friend, Jean Chang.

[2]Alice Rothchild and Mary Cullinan. Claims against two other defendants were voluntarily dismissed.

[3]Previously, the judge had allowed, on statute of limitations grounds, the defendants' motion for summary judgment with respect to claims asserted by the plaintiff's parents. The parents have not appealed those dismissals.

1. There is no merit to the plaintiff's threshold argument that a judge may not entertain a summary judgment motion where a medical malpractice tribunal previously has determined that the plaintiff's offer of proof met the directed verdict standard articulated in *Little* v. *Rosenthal*, 376 Mass. 573, 578 (1978). This contention fails to take into account that further development of the case during discovery may reveal that, despite having submitted a sufficient offer of proof, the plaintiff "has no reasonable expectation of proving an essential element" by admissible evidence at trial. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).

2. That said, the defendants are not entitled to summary judgment. The defendants did not dispute that the plaintiff was able to present adequate proof of negligence. Their sole argument was that the plaintiff's expert opinion failed to establish a causal relationship between the plaintiff's exposure to chemotherapy and any medical or other condition from which she presently suffers. The motion judge accepted this argument and its underlying premise that the plaintiff was required to show that the exposure resulted in a full-blown present condition, as distinct from an increased likelihood of developing problems in the future.

Unlike the motion judge, we have the benefit of the subsequently decided case of *Donovan* v. *Philip Morris USA, Inc.*, 455 Mass. 215 (2009) (*Donovan*), which sheds light on the issue presented here. In *Donovan*, the defendant contended that the plaintiffs, smokers who had yet to develop lung cancer, did not allege a present physical injury with objective symptoms and, therefore, could not proceed with their tort case. The Supreme Judicial Court disagreed, stating that the plaintiffs had produced sufficient expert evidence of present injury caused by smoking, i.e., physiological changes that placed them at substantially greater risk of developing cancer. *Id.* at 224-225. The court reasoned that "[i]llness and disease from exposure to [toxic] substances are often latent, not manifesting themselves for years or even decades after the exposure" and that "[w]e must adapt to the growing recognition that exposure to toxic substances and radiation may cause substantial injury which should be compensable even if the full effects are not immediately apparent." *Id.* at 225.

In the present case, the summary judgment record, taken in the light most favorable to the plaintiff, see *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991), establishes that, while pregnant with the plaintiff, the plaintiff's mother underwent three rounds of chemotherapy. An ultrasound performed one month after the completion of the chemotherapy showed that the fetus had not grown much during that month. The fetus was diagnosed with intra-uterine growth retardation,[4] and the mother's labor was induced early, at thirty-six weeks. Because the fetus did not tolerate the induction, a caesarean section was performed. The plaintiff weighed only 1,760 grams, or 3.14 pounds at birth. Following her birth, the plaintiff suffered from low appetite and low growth, and consistently was below the tenth percentile in weight. She also suffered from delayed speech and communication difficulties, and had behavioral issues at preschool.

The expert opinion in question is contained in a December 11, 2006, letter,

---

[4]Intrauterine growth retardation, also known as intrauterine growth restriction, is defined as birth weight below average, usually below the tenth percentile for the infant's gestational age. Am. Jur. Proof of Facts 3d, Attorney's Illustrated Med. Dictionary R:127 (Supp. 2010).

which was before the judge at the summary judgment hearing. In that letter, the plaintiff's expert, Dr. Berto Lopez, wrote, in relevant part:

> "The use of chemotherapy in pregnancy carries many serious risks to the fetus including growth restriction, placental dysfunction and long-term developmental risks to the unborn baby. Due to the delay in diagnosis, chemotherapy was necessary for [the mother] and resulted in the intrauterine growth restriction to the child and caesarian [sic] section. The child is now reported to have developmental delays that are related to the exposure to chemotherapy while in utero."

Dr. Lopez's opinion creates a genuine issue of material fact whether the plaintiff suffered adverse physiological changes as a result of her exposure to chemotherapy, i.e., intrauterine growth retardation necessitating delivery by caesarean section weeks before she reached full term. In addition, it establishes that exposure to chemotherapy in utero creates long-term developmental risks to the fetus. Whether or not the opinion letter also suffices to draw a causal connection between chemotherapy and any of the plaintiff's manifest developmental deficits[5] or other conditions,[6] it was adequate to avoid summary judgment under the principles explained in *Donovan*. Of course, the extent to which the plaintiff has suffered, or will likely suffer developmental deficits or other health problems as a result of her in utero exposure to chemotherapy remains to be proved by the plaintiff at trial. See *Donovan, supra* at 223.[7]

The judgment is reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

*Kenneth M. Levine* for the plaintiff.
*Pamela S. Gilman* for the defendants.

---

[5]Contrary to the defendants' argument, we do not read the use of the word "reported" in Dr. Lopez's letter to mean that he holds no opinion on a causal connection between the plaintiff's exposure to chemotherapy and her developmental delays. Read in context and reasonably understood, the word "reported" merely reflects that Dr. Lopez did not personally examine or evaluate the plaintiff for developmental delays but learned about them from others.

[6]There also are references in the record to other conditions from which the plaintiff suffers: a progressive hearing deficit and neurofibromatosis secondary to gene mutation.

[7]Because we conclude that summary judgment should not have been granted on the original record before the judge, we need not decide whether it was an abuse of discretion to deny the plaintiff's motions to file supplementary materials, including a new opinion letter from her expert, after the summary judgment hearing.