337 Conn. 27 JUNE, 2021 27

Dougan *v.* Sikorsky Aircraft Corp.

DANNY DOUGAN *v.* SIKORSKY AIRCRAFT
CORPORATION ET AL.
(SC 20271)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.*

*Syllabus*

The plaintiffs sought to recover damages from the defendants, S Co. and
its general contractor, C Co., alleging, inter alia, that they had been
negligently exposed to asbestos while working for subcontractors on a
construction project at S Co.'s facility. Specifically, the plaintiffs sought
compensatory and punitive damages, the costs of medical monitoring
for asbestos related diseases, and the establishment of a court monitored
fund to pay those costs. The defendants moved for summary judgment
on the ground that the plaintiffs had not suffered any actual injuries
and, instead, were seeking medical monitoring for the risk of future
injuries, which the defendants claimed is not cognizable under Connecti-
cut law. The trial court determined that, because the plaintiffs conceded
that they had not been diagnosed with an asbestos related disease, they
had failed to establish a genuine issue of material fact as to the existence
of a physical injury. Addressing an issue of first impression under Con-
necticut law, the court then concluded that a claim for medical monitor-
ing for an increased risk of future injury, in the absence of any present,
physical harm, was not cognizable under Connecticut law. Thereafter,
the court granted the defendants' motion for summary judgment and
rendered judgment for the defendants. On the plaintiffs' appeal, *held*
that the trial court's judgment was affirmed on the alternative ground
that, even if this court were to recognize a cause of action for medical
monitoring in the absence of the present manifestation of physical injury,
the plaintiffs nevertheless failed to establish a genuine issue of material
fact as to other elements of a medical monitoring claim, namely, whether
medical monitoring was reasonably necessary for each individual plain-
tiff.

Argued December 18, 2019—officially released September 14, 2020**

*Procedural History*

Action to recover damages for, inter alia, the defen-
dants' alleged negligence in exposing the named plain-
tiff to asbestos, and for other relief, brought to the
Superior Court in the judicial district of Tolland and
transferred to the judicial district of Hartford, Complex

* The listing of justices reflects their seniority status on this court as of
the date of oral argument.

** September 14, 2020, the date that this decision was released as a slip
opinion, is the operative date for all substantive and procedural purposes.

Dougan *v.* Sikorsky Aircraft Corp.

Litigation Docket, where Philip Badorek et al. were added as plaintiffs; thereafter, the court, *Miller, J.*, granted in part the motion of the named defendant et al. to strike and granted in part the plaintiffs' motion for class certification; subsequently, the court, *Moll, J.*, granted the motions of the named defendant et al. for summary judgment, vacated the order granting class certification, and rendered judgment for the named defendant et al., from which the plaintiffs appealed. *Affirmed.*

*Keith Yagaloff*, for the appellants (plaintiffs).

*John W. Cerreta*, with whom was *James H. Rotondo*, for the appellees (named defendant et al.).

*Opinion*

ROBINSON, C. J. This appeal requires us to consider the proof necessary to establish a claim for medical monitoring, the availability of which is a question of first impression under Connecticut law. The plaintiffs Philip Badorek, Michael Daley, William Grem IV, and Fred Ferrara[1] appeal from the judgment of the trial court rendered in favor of the defendants Sikorsky Aircraft

---

[1] The named plaintiff, Danny Dougan, was the fifth plaintiff in the proceedings before the trial court. Dougan died in December, 2017, while his appeal was pending before the Appellate Court. Dougan was initially the only plaintiff to appeal, and, after he died, the defendants moved to dismiss the appeal. The defendants argued that Dougan's claims for medical monitoring were moot and that, because he was the only plaintiff on appeal, the case should be dismissed. Carol Ann Slicer, the executor of Dougan's estate, then filed a motion for leave to substitute herself for Dougan. The Appellate Court granted this motion. Dougan's estate then filed an objection to the motion to dismiss, contending that the claims were not moot and that, because of technical difficulties, the other plaintiffs had not been named in the appeal. The Appellate Court granted the defendants' motion to dismiss Dougan's appeal but also permitted the remaining plaintiffs to file a late appeal, which is presently before this court. See footnote 3 of this opinion. As a result, we consider only the claims of the four remaining plaintiffs, and all references herein to the plaintiffs collectively are to them.

Dougan *v.* Sikorsky Aircraft Corp.

Corporation (Sikorsky) and Carrier Corporation (Carrier)[2] on their medical monitoring claims, which stemmed from a workplace asbestos exposure at Sikorsky's cogeneration project in Stratford. On appeal,[3] the plaintiffs claim that the trial court improperly granted the defendants' motion for summary judgment because (1) a genuine issue of material fact exists with respect to the issue of physical injury because the plaintiffs each currently suffer from a subclinical injury as a result of asbestos exposure, and (2) Connecticut law permits a cause of action[4] for medical monitoring. We conclude that the trial court properly granted the defendants' motion for summary judgment, albeit on alternative grounds, because, even if we were to recognize a medical monitoring claim in the absence of any physical manifestation of injury under Connecticut law, the plaintiffs nevertheless failed to establish a genuine issue of material fact as to certain elements of the claim, in particular, whether the provision of medical monitoring is reasonably necessary for them. Accordingly, we affirm the judgment of the trial court.

[2] The plaintiffs withdrew their claims against the third defendant, URS Corporation AES, on July 30, 2019, during the pendency of this appeal. See footnote 6 of this opinion.

[3] After receiving permission to file a late appeal; see footnote 1 of this opinion; the plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we subsequently transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] We note that the trial court considered the plaintiffs' position as a request for a medical monitoring remedy rather than an independent cause of action. On appeal, the plaintiffs request either the recognition of a stand-alone cause of action or a remedy. Although there are some differences between the two approaches, the elements of proof for either approach to medical monitoring are the same. See 1 J. McLaughlin, Class Actions (16th Ed. 2019) § 5:18 ("The distinction between recognizing medical monitoring as an independent cause of action and allowing it solely as a remedial measure has practical consequences. If medical monitoring is not an independent cause of action, then the plaintiff must establish all elements of an independent basis of recovery, and the defendants may assert all available affirmative defenses as against individuals. However, the elements of proof for medical monitoring as a cause of action and as a remedy remain the same and must be established by the plaintiffs." (Footnote omitted.)).

Dougan *v.* Sikorsky Aircraft Corp.

The record reveals the following undisputed relevant facts and procedural history. In September, 2009, Sikorsky began work on a cogeneration project at its manufacturing facilities in Stratford. Sikorsky hired Carrier as the general contractor responsible for the project, which involved building a new cogeneration plant and renovating Sikorsky's existing boiler house. Three of the plaintiffs, Badorek, Daley, and Grem, were employed by B-G Mechanical Contractors, Inc. (B-G Mechanical), one of Carrier's subcontractors on the cogeneration project. B-G Mechanical employees were responsible for removing pipe from Sikorsky's boiler house. As a result, these plaintiffs were present at various times at the site from March, 2010, to July, 2010. The fourth plaintiff, Ferrara, was employed by Tucker Mechanical, Inc., another subcontractor, and was present on site for a period of time in March, 2010.[5]

At some point during the project, some workers began to complain of sore throats. Then, on July 7 or 8, 2010, a B-G Mechanical employee discovered what he believed to be asbestos present in the boiler house. Sikorsky then performed testing that confirmed the presence of asbestos in the boiler house and in an exterior dumpster. As a result, Sikorsky halted the project on or about July 23, 2010, in order to remediate the asbestos. The plaintiffs asserted in their complaint that Sikorsky was aware of the presence of asbestos in the boiler house before work on the project began. In response, Sikorsky admitted that, after performing surveys in 2001 and 2008, asbestos had been discovered in a small amount of pipe insulation in the boiler house basement but averred that the Sikorsky employees in

---

[5] The defendants contend that Ferrara was not involved in pipe demolition or removal and that he never entered the basement where the asbestos was found. Viewing the evidence in the light most favorable to the plaintiffs, we accept their argument that this is irrelevant, as asbestos was also found on the main floor of the boiler house and in an exterior dumpster, areas where Ferrara worked.

Dougan *v.* Sikorsky Aircraft Corp.

charge of the cogeneration project were unaware of this fact.

The named plaintiff, Danny Dougan; see footnote 1 of this opinion; brought a class action complaint in May, 2012, against Sikorsky, Carrier, and URS Corporation AES (URS).[6] The operative complaint, filed on April 1, 2013, includes claims of negligence, battery, recklessness, and strict liability for violations of the federal Clean Air Act, 42 U.S.C. § 7401 et seq., on behalf of Dougan, Grem, Daley, Badorek, and Ferrara individually, as well as "all others similarly situated who were exposed to asbestos while working at the [Sikorsky cogeneration project in Stratford] from the period of approximately March, 2010, to mid-July, 2010, and who are now seeking to pursue remedies for said exposure." The plaintiffs sought compensatory damages, punitive damages, the costs of medical monitoring, and the establishment of a "court monitored fund" for the payment of medical monitoring of asbestos related diseases.[7]

---

[6] The initial complaint also named A/Z Corporation, Clean Harbors of Connecticut, Inc., and Clean Harbors Environmental Services, Inc., as defendants; the action was later withdrawn as to those parties.

[7] The plaintiffs moved for class certification in July, 2013, and requested that the trial court certify a class of approximately forty persons who were allegedly exposed to asbestos during the Sikorsky cogeneration project. The defendants objected and submitted affidavits from two experts, Charles L. Blake, an industrial hygienist, and Mark Metersky, a pulmonologist. Specifically, the defendants argued, inter alia, that the plaintiffs failed to demonstrate that common questions predominate, and, as such, class certification would be inappropriate. The trial court granted in part and denied in part the plaintiffs' request to certify the class in February, 2016. In its memorandum of decision, the trial court concluded that the plaintiffs had not demonstrated sufficient commonality in their claims for medical monitoring due to certain individual inquiries, such as each "class member's current medical condition . . . ." Nevertheless, the court proceeded to certify the class but excluded certain issues from class treatment, such as a class member's need for medical monitoring. Simultaneously, the court also granted in part and denied in part motions to strike filed by Sikorsky and Carrier, striking the plaintiffs' federal Clean Air Act claims but permitting their other strict liability claims to proceed.

Dougan *v.* Sikorsky Aircraft Corp.

In March, 2016, Carrier and Sikorsky moved for summary judgment on all counts of the plaintiffs' complaint.[8] The defendants contended that the plaintiffs had not suffered actual injuries and, instead, sought medical monitoring for a risk of future injury, which they claimed is not a cognizable claim under Connecticut law. Specifically, they argued that (1) the court should not recognize a remedy for medical monitoring based on exposure alone, (2) even under the plaintiffs' theory of recovery, summary judgment is appropriate because Dougan could not prove that his need for medical monitoring resulted from asbestos exposure, and because the other four plaintiffs failed to produce any expert testimony demonstrating their need for medical monitoring, and (3) certain claims failed as a matter of law, specifically, the plaintiffs' claims for battery, strict liability, and punitive damages. The defendants filed numerous exhibits in support of their motion, including excerpts of deposition transcripts of the plaintiffs' two medical experts, M. Saud Anwar and Oyebode Taiwo, and the defendants' medical expert, Barry W. Levine. Levine's deposition testimony discussed his examination of Dougan and the general effects of asbestos exposure, including the long latency period before asbestos related diseases manifest. In their depositions, both Anwar and Taiwo stated that they had not formed any opinions regarding the claims of Grem, Badorek, Daly, or Ferrara. Additionally, Anwar acknowledged that "a significant percentage of people who are exposed to and inhale asbestos . . . never develop clinical symptoms . . . ."

The plaintiffs filed an objection to the summary judgment motion, contesting the defendants' characteriza-

_____

[8] Shortly thereafter, URS filed its second motion for summary judgment, asserting largely the same claims as Sikorsky and Carrier. URS had filed its first motion for summary judgment in 2014, but the trial court did not decide this motion before granting URS' second motion for summary judgment on March 28, 2017.

Dougan *v.* Sikorsky Aircraft Corp.

tion of their knowledge of the presence of asbestos, the current status of the law of medical monitoring, and the public policy reasons against extending liability. Along with their objection, the plaintiffs included an affidavit from Anwar. Anwar's three page affidavit specifically addressed his treatment of Dougan and concluded that Dougan suffered from a "significantly increased risk of contracting a serious disease," and also discussed generally the risks of asbestos, such as the injuries asbestos fibers cause to a person's lungs when inhaled. Additionally, the affidavit stated that "[o]ther individuals who were exposed to asbestos during the demolition work at Sikorsky should be monitored for the early detection and intervention of an asbestos related disease . . . ." The plaintiffs also submitted other exhibits concerning the presence of asbestos at Sikorsky and the defendants' actions surrounding the incident, but they provided no further expert testimony.

On March 28, 2017, the trial court granted the defendants' motion for summary judgment. See footnote 8 of this opinion. In its memorandum of decision, the trial court reviewed the evidence in the record and determined that no expert had examined or reviewed the medical records of any of the plaintiffs other than Dougan and that all of the plaintiffs admitted that they had not been diagnosed with an asbestos related disease, specifically, "mesothelioma, lung cancer, asbestosis, or pleural effusions." As a result, the trial court determined that the plaintiffs had not presented evidence demonstrating a genuine issue of material fact as to physical injury. The trial court then applied the public policy test outlined in *Lawrence* v. *O & G Industries, Inc.*, 319 Conn. 641, 650–51, 126 A.3d 569 (2015), and declined to recognize a cause of action for medical monitoring under Connecticut law that would allow recovery for an increased risk of future injury rather

Dougan *v.* Sikorsky Aircraft Corp.

than a present injury. Accordingly, the court granted the defendants' motion for summary judgment, vacated the class certification order, and rendered judgment for the defendants on the remaining counts. See footnotes 7 and 8 of this opinion. The trial court later denied the plaintiffs' motion for reargument or reconsideration. This appeal followed. See footnotes 1 and 3 of this opinion.

On appeal, the plaintiffs argue that the trial court incorrectly concluded that medical monitoring claims in the absence of clinical symptoms should not be permitted under Connecticut tort law. The plaintiffs further argue that the trial court incorrectly determined that there was no genuine dispute of material fact as to their injuries because they suffer from subclinical injuries as a result of their asbestos exposure. In response, the defendants counter that the trial court properly declined to create a medical monitoring remedy for asymptomatic plaintiffs exposed to toxic substances in the absence of physical harm. As an alternative ground for affirming the judgment of the trial court, the defendants argue that, even if this court were to recognize medical monitoring as a cause of action, the plaintiffs' claims would still fail because they are not supported by "reliable, scientific evidence . . . ."[9] We agree with the defendants that, even if we were to recognize a remedy in Connecticut for medical monitoring in the absence of the present manifestation of physical harm, the plaintiffs' claims would still fail as a matter of law because

[9] The defendants raised this issue as an alternative ground to affirm the trial court's judgment in their preliminary statement of the issues pursuant to Practice Book § 63-4 (a) (1); they also raised this issue before the trial court in their motion for summary judgment. See, e.g., *Thomas* v. *West Haven*, 249 Conn. 385, 390–91 n.11, 734 A.2d 535 (1999) (discussing procedural requirements for considering alternative grounds), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000); *Chamerda* v. *Opie*, 185 Conn. App. 627, 645–46, 197 A.3d 982 (same), cert. denied, 330 Conn. 953, 197 A.3d 893 (2018).

Dougan *v.* Sikorsky Aircraft Corp.

the plaintiffs failed to prove that monitoring was medically necessary.

We first set forth the applicable standard of review. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case. . . . Finally, the scope of our review of the trial court's decision to grant the plaintiff's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Stuart* v. *Freiberg*, 316 Conn. 809, 820–21, 116 A.3d 1195 (2015).

"When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book [§ 17-45] . . . ." (Internal quotation marks omitted.)

Dougan *v.* Sikorsky Aircraft Corp.

*State Farm Fire & Casualty Co.* v. *Tully*, 322 Conn. 566, 573, 142 A.3d 1079 (2016).

I

We begin our analysis with a review of the medical monitoring claim. Medical monitoring, either in the form of damages or as a stand-alone cause of action; see footnote 4 of this opinion; allows a plaintiff to recover the cost of diagnostic testing for an injury that may occur in the future as a result of a defendant's tortious conduct.[10] See, e.g., *Metro-North Commuter Railroad Co.* v. *Buckley*, 521 U.S. 424, 438, 117 S. Ct. 2113, 138 L. Ed. 2d 560 (1997) (defining medical monitoring as "the economic cost of the extra medical checkups that [the plaintiff] expects to incur as a result of his exposure to [toxins]"). Given the nature of the relief provided by medical monitoring and the prevalence of these claims in the world of toxic torts,[11] the central issue in such cases is whether to permit medical monitoring in the absence of some present manifestation of a physical injury. Although medical monitoring is no longer a novel theory of recovery in many states, whether such recovery is permitted in Connecticut is still an open question of law. See *Doe* v. *Stamford*, 241 Conn. 692, 699–700 n.8, 699 A.2d 52 (1997) (discussing

---

[10] Medical monitoring differs doctrinally from a claim for enhanced risk. See A. Schwartz, Annot. "Recovery of Damages for Expense of Medical Monitoring To Detect or Prevent Future Disease or Condition," 17 A.L.R.5th 327, 336, § 2 (a) (1994) ("[m]edical monitoring, as this cause of action has come to be known, has been defined as an action seeking to recover the quantifiable costs of periodic future medical examinations to detect the onset of physical harm . . . as distinguished from an enhanced risk claim which seeks compensation for the anticipated harm itself or for increased apprehension of such harm" (internal quotation marks omitted)).

[11] See A. Slagel, Note, "Medical Surveillance Damages: A Solution to the Inadequate Compensation of Toxic Tort Victims," 63 Ind. L.J. 849, 852 (1987–1988) ("In a toxic tort case the significant personal injuries often are not detectable simultaneously upon exposure to the toxic substance, but rather are latent. In fact, most toxic injuries do not manifest themselves as clinically detectable ailments until years after exposure occurs." (Footnote omitted.)).

Dougan *v.* Sikorsky Aircraft Corp.

medical monitoring test outlined in *In re Paoli Railroad Yard PCB Litigation*, 916 F.2d 829, 852 (3d Cir. 1990), cert. denied sub nom. *General Electric Co.* v. *Knight*, 499 U.S. 961, 111 S. Ct. 1584, 113 L. Ed. 2d 649 (1991), but noting that neither party requested its adoption in workers' compensation law); see also *McCullough* v. *World Wrestling Entertainment, Inc.*, 172 F. Supp. 3d 528, 567 (D. Conn. 2016) (discussing how "[f]ew Connecticut courts" have considered viability of stand-alone medical monitoring claims), aff'd in part and appeal dismissed in part sub nom. *Haynes* v. *World Wrestling Entertainment, Inc.*, 827 Fed. Appx. 3 (2d Cir. 2020). Given that medical monitoring claims present an issue of first impression in Connecticut, we begin with a detailed review of the federal and sister state precedents considering these claims.

In the 1980s and 1990s, state and federal courts began permitting medical monitoring recovery in toxic exposure cases in the absence of a manifestation of present physical injury, as in the seminal case of *Ayers* v. *Jackson*, 106 N.J. 557, 604–606, 525 A.2d 287 (1987). See, e.g., *In re Paoli Railroad Yard PCB Litigation*, supra, 916 F.2d 850–52; *Burns* v. *Jaquays Mining Corp.*, 156 Ariz. 375, 380, 752 P.2d 28 (App. 1987), review dismissed, 162 Ariz. 186, 781 P.2d 1373 (1989); *Potter* v. *Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1007–1009, 863 P.2d 795, 25 Cal. Rptr. 2d 550 (1993); *Hansen* v. *Mountain Fuel Supply Co.*, 858 P.2d 970, 977–78 (Utah 1993). These cases were often supported by the reasoning of an earlier medical monitoring case, *Friends for All Children, Inc.* v. *Lockheed Aircraft Corp.*, 746 F.2d 816, 819, 822, 838 (D.C. Cir. 1984), in which the United States Court of Appeals for the District of Columbia Circuit upheld the creation of a medical monitoring fund for children who suffered from a "neurological development disorder" after a plane crash.[12]

---

[12] See also *Sadler* v. *PacifiCare of Nevada, Inc.*, 130 Nev. 990, 998–99, 340 P.3d 1264 (2014) (explaining that *Friends for All Children, Inc.*, was "[o]ne

Dougan *v.* Sikorsky Aircraft Corp.

Subsequently, in 1997, the United States Supreme Court rejected a medical monitoring cause of action under federal law in *Metro-North Commuter Railroad Co.* v. *Buckley*, supra, 521 U.S. 444. In that case, an asymptomatic plaintiff requested lump sum damages under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., after he was exposed to asbestos during his duties as a railroad employee. Id., 426–27. The court considered earlier cases that permitted asymptomatic medical monitoring recovery under state law and noted that those cases imposed certain "integral" restrictions on a plaintiff's case, such as limiting recovery through the establishment of a court administered fund. Id., 440–41, 444. The court then outlined several policy considerations that weighed against the recognition of this claim, namely, the substantial number of potential plaintiffs who have been exposed to toxic substances, along with the high costs of monitoring. Id., 442. But, in light of these conflicting policy concerns and the inadequate support in the common law, the court declined to create "a new, full-blown, tort law cause of action" under the federal statute being considered. Id., 443.

State appellate courts have been divided in the wake of *Buckley* with respect to whether to permit recovery for medical monitoring in the absence of the manifestation of a physical injury under their states' respective laws.[13] See V. Schwartz & C. Silverman, "The Rise of

of the earliest cases to consider a medical monitoring claim" and that several courts subsequently relied on its reasoning to "[conclude] that a physical injury is not required in order to recover the costs of medical monitoring"); H. Zarov et al., "A Medical Monitoring Claim for Asymptomatic Plaintiffs: Should Illinois Take the Plunge?," 12 DePaul J. Health Care L. 1, 3 (2009) ("[c]ourts and commentators generally trace the origins of medical monitoring claims to the . . . decision [of the District of Columbia Circuit] in *Friends* [*f*]*or All Children, Inc.*").

[13] For courts rejecting medical monitoring claims in the absence of physical injury after *Buckley*, see *Hinton ex rel. Hinton* v. *Monsanto Co.*, 813 So. 2d 827, 831–32 (Ala. 2001), *Wood* v. *Wyeth-Ayerst Laboratories*, 82 S.W.3d 849, 857 (Ky. 2002), *Paz* v. *Brush Engineered Materials, Inc.*, 949 So. 2d 1, 5–7 (Miss. 2007), *Henry* v. *Dow Chemical Co.*, 473 Mich. 63, 81, 86, 701

Dougan *v.* Sikorsky Aircraft Corp.

'Empty Suit' Litigation:™ Where Should Tort Law Draw the Line?,'' 80 Brook. L. Rev. 599, 620 (2015) (discussing how, after *Buckley*, courts rejected claims for medical monitoring, but, recently, ''the pendulum briefly swung back toward permitting medical monitoring claims''); H. Zarov et al., ''A Medical Monitoring Claim for Asymptomatic Plaintiffs: Should Illinois Take the Plunge?,'' 12 DePaul J. Health Care L. 1, 2 (2009) (''[M]ost courts addressing the issue since *Buckley* have rejected claims for medical monitoring absent physical injury. Nevertheless, a few courts have issued post-*Buckley* decisions adopting claims for medical monitoring, while other courts have continued to implement pre-*Buckley* decisions. Thus, although there is a clear trend against the recognition of medical monitoring claims, the debate is far from over.'').

A challenging issue presented by the plaintiffs' claims in this case is determining the nature of the harm, if any, caused by their exposure to asbestos. Past plaintiffs have sought medical monitoring for a variety of

N.W.2d 684 (2005), *Curl* v. *American Multimedia, Inc.*, 187 N.C. App. 649, 657, 654 S.E.2d 76 (2007), *Lowe* v. *Philip Morris USA, Inc.*, 344 Or. 403, 415, 183 P.3d 181 (2008), and *Alsteen* v. *Wauleco, Inc.*, 335 Wis. 2d 473, 488–91, 802 N.W.2d 212, review denied, 338 Wis. 2d 323, 808 N.W.2d 715 (2011). Cf. *Caronia* v. *Philip Morris USA, Inc.*, 22 N.Y.3d 439, 452, 5 N.E.3d 11, 982 N.Y.S.2d 40 (2013) (requiring evidence of ''present physical injury or *damage to property*'' (emphasis added)).

For courts allowing a claim for medical monitoring to proceed post *Buckley*, see *Petito* v. *A.H. Robins Co.*, 750 So. 2d 103, 104, 108 (Fla. App. 1999), review denied, 780 So. 2d 912 (2001), and review denied sub nom. *Zenith Goldline Pharmaceuticals, Inc.* v. *Petito*, 780 So. 2d 916 (2001), *Berry* v. *Chicago*, 133 N.E.3d 1201, 1209 (Ill. App.), appeal allowed, 132 N.E.3d 284 (Ill. 2019), *Exxon Mobil Corp.* v. *Albright*, 433 Md. 303, 378–80, 71 A.3d 30, cert. denied, 571 U.S. 1045, 134 S. Ct. 648, 187 L. Ed. 2d 449 (2013), *Donovan* v. *Philip Morris USA, Inc.*, 455 Mass. 215, 225–26, 914 N.E.2d 891 (2009), *Meyer ex rel. Coplin* v. *Fluor Corp.*, 220 S.W.3d 712, 717–18 (Mo. 2007), *Sadler* v. *PacifiCare of Nevada*, 130 Nev. 990, 998–99, 340 P.3d 1264 (2014), and *Bower* v. *Westinghouse Electric Corp.*, 206 W. Va. 133, 140, 522 S.E.2d 424 (1999).

Dougan *v.* Sikorsky Aircraft Corp.

injuries, ranging from toxins present in their blood[14] to traumatic brain injuries.[15] The plaintiffs in the present case claim that their asbestos exposure caused them to suffer a subclinical injury, which is one that is "not detectable or [that is] producing effects that are not detectable by the usual clinical tests . . . ." Merriam-Webster's Collegiate Dictionary (11th Ed. 2011) p. 1242; accord Webster's New Complete Medical Dictionary (1995) p. 667. Relying on *Donovan* v. *Philip Morris USA, Inc.*, 455 Mass. 215, 914 N.E.2d 891 (2009), the plaintiffs contend specifically that the trial court incorrectly determined that their subclinical injuries were not actual injuries because, once they were exposed to asbestos at the Sikorsky project, the asbestos fibers entered their lungs and damaged their cells, creating a "preclinical stage of disease." They ask us to adopt the legal framework from *Donovan* to govern medical monitoring claims arising from subclinical injuries.

In *Donovan*, the Supreme Judicial Court of Massachusetts considered a certified question from a federal district court asking whether "the plaintiffs' suit for medical monitoring, based on subclinical effects of exposure to cigarette smoke and increased risk of lung cancer, state[d] a cognizable claim and/or permit[ted] a remedy under Massachusetts state law . . . ." (Internal quotation marks omitted.) Id., 215–16. The plaintiffs, a proposed class of Marlboro cigarette smokers, argued that the defendant had "wrongfully designed, marketed, and sold" its cigarettes and requested a "court-supervised program" for medical monitoring, specifically, of "low-dose computed tomography . . . scans of the chest" to screen for lung cancer. Id., 216–17. The plaintiffs alleged that, because they had used the defendant's

---

[14] See *Rhodes* v. *E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 92 (4th Cir.), cert. denied, 565 U.S. 977, 132 S. Ct. 499, 181 L. Ed. 2d 347 (2011).

[15] See *McCullough* v. *World Wrestling Entertainment, Inc.*, supra, 172 F. Supp. 3d 535.

Dougan *v.* Sikorsky Aircraft Corp.

defective products, they suffered "objectively observable and identifiable damage to the tissues and structures of their lungs'' and, as a result, are at a "substantially increased risk of cancer . . . .'' Id., 221.

The Massachusetts high court accepted the plaintiffs' theory of harm and recognized a stand-alone medical monitoring cause of action for the plaintiffs' subclinical injuries under Massachusetts law. Id., 226–27. The court reasoned that, just as a shaken baby would be able to recover expenses for diagnostic testing to determine if she had suffered a brain injury, so, too, should the plaintiffs, as they "have produced sufficient proof of 'impact' . . . to safeguard against false claims: they have proffered evidence of physiological changes caused by smoking, and they have proffered expert medical testimony that, because of these physiological changes, they are at a substantially greater risk of cancer due to the negligence of Philip Morris.'' (Citation omitted.) Id., 224–25. The court discussed the importance of subcellular changes, stating that such "changes may occur which, in themselves, are not symptoms of any illness or disease, but are warning signs to a trained physician that the patient has developed a condition that indicates a substantial increase in risk of contracting a serious illness or disease and thus the patient will require periodic monitoring.'' Id., 225. The court in *Donovan* distinguished the facts of that case from those in "cases that involve exposure to levels of chemicals or radiation known to cause cancer, for which immediate medical monitoring may be medically necessary although no symptoms or subclinical changes have occurred.'' (Emphasis omitted.) Id. Because the record in *Donovan* presented evidence of subcellular change indicating an increased risk of cancer, the plaintiffs had adequately demonstrated injury.

The Massachusetts court outlined the following standard for its medical monitoring cause of action, requir-

Dougan *v.* Sikorsky Aircraft Corp.

ing that "each plaintiff" prove that "(1) [t]he defendant's negligence (2) caused (3) the plaintiff to become exposed to a hazardous substance that produced, at least, subcellular changes that substantially increased the risk of serious disease, illness, or injury (4) for which an effective medical test for reliable early detection exists, (5) and early detection, combined with prompt and effective treatment, will significantly decrease the risk of death or the severity of the disease, illness or injury, and (6) such diagnostic medical examinations are reasonably (and periodically) necessary, conformably with the standard of care, and (7) the present value of the reasonable cost of such tests and care, as of the date of the filing of the complaint." Id., 226. In addition, the court stated that proof of these elements "usually will require competent expert testimony." Id., 227.

II

Having reviewed the background law governing medical monitoring claims, we now turn to the plaintiffs' claims in the present appeal. We begin by setting forth several assumptions that underlie our analysis. First, we will assume, without deciding, that Connecticut law recognizes a claim for subclinical cellular injury that substantially increased the plaintiffs' risk of cancer and other asbestos related diseases.[16] Second, we also

---

[16] We note that other courts have rejected similar arguments with respect to whether subclinical injuries are in fact physical injuries as a matter of law. See *Rhodes* v. *E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 95 (4th Cir.) (disagreeing with plaintiffs' argument that exposure to toxin that created "[an] alteration in the structure of [the plaintiffs'] blood is an injury" in negligence cause of action (internal quotation marks omitted)), cert. denied, 565 U.S. 977, 132 S. Ct. 499, 181 L. Ed. 2d 347 (2011); *June* v. *Union Carbide Corp.*, 577 F.3d 1234, 1249 (10th Cir. 2009) ("It is true that a number of courts have recognized [medical monitoring] claims . . . premised on subclinical effects of toxic exposure. But, tellingly, these courts *have not reasoned that subclinical injuries from a toxic agent are bodily or physical injuries*." (Emphasis altered.)); *Parker* v. *Wellman*, 230 Fed. Appx. 878, 881–83 (11th Cir. 2007) (rejecting plaintiffs' theory of subcellular harm as physical injury under Georgia law); *Bell* v. *3M Co.*, 344 F. Supp. 3d 1207, 1216 (D. Colo. 2018) (disagreeing with plaintiffs' theory that "the bioaccumu-

Dougan *v.* Sikorsky Aircraft Corp.

assume, without deciding, that the *Donovan* elements govern proof of a medical monitoring claim. Finally, we assume that the plaintiffs raised a genuine dispute of material fact as to whether they were negligently exposed to asbestos during the Sikorsky project. We nevertheless conclude that the trial court properly granted the defendants' motion for summary judgment because the plaintiffs have not established the existence of a genuine issue of material fact as to certain *Donovan* factors.[17] See, e.g., *Stuart* v. *Freiberg*, supra, 316 Conn.

___

lation of toxins or subclinical damage constitute[s] a present physical injury''); see also J. Grodsky, "Genomics and Toxic Torts: Dismantling the Risk-Injury Divide," 59 Stan. L. Rev. 1671, 1674 (2007) ("Although the case law addressing subcellular damage is limited . . . most courts have treated such damage as benign, de minimis, or otherwise legally inconsequential. Courts greatly prefer to draw bright lines between risk and injury, and continue to place the boundary at proof of classic medical symptoms or overt impairment." (Footnote omitted.)). But see *Sullivan* v. *Saint-Gobain Performance Plastics Corp.*, 431 F. Supp. 3d 448, 454–55 (D. Vt. 2019) ("It is more likely that the Vermont Supreme Court will follow the definition of bodily harm developed in [§ 15 of] the Restatement [(Second) of Torts] and apply it to latent injuries caused by chemical exposure. By defining bodily harm to include any alteration to a person's body, the Restatement [(Second) of Torts] includes changes such as abnormal blood serum results showing the presence of an unusual and potentially harmful chemical.").

One Connecticut trial court has held that a very similar theory of liability in an asbestos exposure case raised a question of fact for the jury to decide. See *Bowerman* v. *United Illuminating*, Superior Court, judicial district of New London at Norwich, Docket No. CV-94-0115436-S (December 15, 1998) (23 Conn. L. Rptr. 589, 592) ("whether . . . the scarring of lung tissue and implantation of asbestos fibers in the lungs constitute a compensable legal harm is an issue of fact if there is evidence showing such conditions to be detrimental and if there is evidence showing the existence of such conditions in the plaintiffs").

[17] We note that other federal and state courts have employed a similar analysis, deeming it unnecessary to determine whether to recognize a claim for medical monitoring because the plaintiffs' proof was inadequate to defeat a motion for summary judgment in any event. See *M.G. ex rel. K.G.* v. *A.I. duPont Hospital for Children*, 393 Fed. Appx. 884, 892–93 (3d Cir. 2010) (declining to consider whether Delaware Supreme Court would permit medical monitoring claim because plaintiff could not state such claim); *In re Marine Asbestos Cases*, 265 F.3d 861, 867 (9th Cir. 2001) (upholding grant of summary judgment because, "even if medical monitoring were available under the Jones Act to a seaman who satisfied the *Paoli* factors, the plaintiffs

Dougan *v.* Sikorsky Aircraft Corp.

823 ("a plaintiff may properly be called upon at the summary judgment stage to demonstrate that he possesses sufficient counterevidence to raise a genuine issue of material fact as to any, or even all, of the essential elements of his [claim]").

Courts, including the one in *Donovan*, generally require competent expert testimony to prove a medical monitoring claim or remedy. See, e.g., *Caronia* v. *Philip Morris USA, Inc.*, 715 F.3d 417, 448 (2d Cir. 2013) ("[a]ll of the [previously discussed] states that recognized a medical monitoring cause of action noted that such a claim cannot be established without reliable expert testimony"); *In re Paoli Railroad Yard PCB Litigation*, supra, 916 F.2d 852 (requiring competent expert testimony to establish medical monitoring cause of action); *Donovan* v. *Philip Morris USA, Inc.*, supra, 455 Mass. 227 ("[p]roof of [the *Donovan*] elements usually will require competent expert testimony"); *Ayers* v. *Jackson*, supra, 106 N.J. 606 (requiring "reliable expert testimony" to recover medical surveillance damages); *Hansen* v. *Mountain Fuel Supply Co.*, supra, 858 P.2d 979 n.10 ("[p]roof of [the *Donovan*] elements will usually require expert testimony"). As a result, if a plaintiff lacks expert testimony to prove a medical monitoring claim, summary judgment should be granted. See *Bozelko* v. *Papastavros*, 323 Conn. 275, 282, 147 A.3d 1023 (2016) ("[s]ummary judgment in favor of a defendant is proper when expert testimony is necessary to prove an essential element of the plaintiff's case and

have failed to present sufficient evidence to raise a genuine issue of material fact as to the reasonableness and necessity of the type of medical monitoring that they seek"); *DeStories* v. *Phoenix*, 154 Ariz. 604, 610, 744 P.2d 705 (App. 1987) (upholding grant of summary judgment after concluding that, even if plaintiffs' medical monitoring theory was legally cognizable, plaintiffs' claim would still fail due to lack of evidence); cf. *Philip Morris, Inc.* v. *Angeletti*, 358 Md. 689, 782, 787, 752 A.2d 200 (2000) (declining to consider whether "medical monitoring is a cognizable claim" under Maryland law because medical monitoring class was improperly certified).

Dougan *v.* Sikorsky Aircraft Corp.

the plaintiff is unable to produce an expert witness to provide such testimony'').

The defendants argue that the plaintiffs ''have totally failed to provide expert evidence establishing their need for medical monitoring as a result of asbestos exposure at Sikorsky.'' The plaintiffs do not dispute that Anwar, their expert witness, has not provided any testimony as to any of them specifically, but they argue that they nevertheless have presented sufficient expert evidence to survive summary judgment. According to the plaintiffs, ''the court [in *Donovan*] did not state that the plaintiffs needed to offer expert medical evidence that spoke to the plaintiffs' specific conditions; instead, the court accepted general expert evidence that attested to the undifferentiated effects that cigarette smoking [has] on any smoker, including the plaintiffs.'' Additionally, the plaintiffs assert only that ''expert evidence must be used to generally inform lay jurors about the scientific correlation between asbestos exposure and the onset of asbestos related diseases.'' Finally, ''the plaintiffs aver that the experts should not form any opinions about the plaintiffs' exposure and their need for medical monitoring or the likelihood of contracting diseases because that function should be reserved [for] the trier of fact.''

We disagree with the plaintiffs that the *Donovan* court's acceptance of ''general expert advice'' assists this inquiry, as that court was considering whether the parties had stated a claim for medical monitoring on a motion to dismiss, not whether the plaintiffs' claims could ultimately survive summary judgment. See *Donovan* v. *Philip Morris USA, Inc.*, supra, 455 Mass. 217, 221. Accordingly, we will look to the requirements of other courts reviewing this issue, including those cited with approval in *Donovan.*

The third *Donovan* factor requires a plaintiff to demonstrate that he or she suffers from a subcellular change

Dougan *v.* Sikorsky Aircraft Corp.

that substantially increases his or her risk of disease. Id., 226. A Massachusetts federal district court recently considered whether expert testimony sufficiently demonstrated subcellular change on a motion for summary judgment. See *Genereux* v. *Hardric Laboratories, Inc.*, 950 F. Supp. 2d 329 (D. Mass. 2013), aff'd, 754 F.3d 51 (1st Cir. 2014). The defendant in *Genereux* argued that the plaintiffs would be unable to succeed at trial under *Donovan* because the plaintiffs' expert had "testified that he cannot state, with reasonable medical certainty, that any plaintiff has suffered subcellular change." Id., 333. The plaintiffs' expert concluded only that "some number of persons will have cellular changes in the blood or lung cells" and "did not state that any specific plaintiff or plaintiffs have suffered beryllium-related subcellular change." (Internal quotation marks omitted.) Id., 336. The court concluded that "*each plaintiff* must submit sufficient admissible evidence to permit a reasonable fact finder to find that he or she has suffered subcellular change." (Emphasis added.) Id., 340. Because the plaintiffs had failed to do so, the court rendered summary judgment for the defendant. Id., 341; see also *Exxon Mobil Corp.* v. *Albright*, 433 Md. 303, 385, 71 A.3d 30 ("[W]e conclude that quantifiable, reliable indicia that a defendant's actions have so increased significantly the plaintiff's risk of developing a disease are necessary to recover damages for medical monitoring costs. The indicia may be proven by a medical expert's testimony, *particularized to a plaintiff*, and demonstrating a reasonable link to toxic exposure." (Emphasis added.)), cert. denied, 571 U.S. 1045, 134 S. Ct. 648, 187 L. Ed. 2d 449 (2013).[18]

---

[18] One federal district court recently rejected a defendant's argument that there must be more individualized expert testimony as to causation. See *Sullivan* v. *Saint-Gobain Performance Plastics Corp.*, 431 F. Supp. 3d 448, 467–70 (D. Vt. 2019). After first predicting that the Vermont Supreme Court would recognize a medical monitoring remedy, the court denied the defendant's motion for summary judgment on the medical monitoring claims of a class of plaintiffs who allegedly had been exposed to perfluorooctanoic acid (PFOA) in their groundwater. Id., 452, 469–70. The defendant argued

Dougan *v.* Sikorsky Aircraft Corp.

The expert affidavit in the present case is ambiguous at best about whether each plaintiff actually suffered subcellular harm that substantially increased his risk of injury.[19] Anwar does aver that "[a]sbestos fibers are readily inhaled into the lungs where the fibers cause changes at [the] cellular level." But the affidavit does not state specifically that Grem, Ferrara, Daley, and Badorek have themselves suffered subcellular change that substantially increased their risk of serious disease, illness, or injury. As a result, it is unclear whether Anwar is concluding that all persons necessarily suffer harmful subcellular change as soon as they are exposed to asbestos, as the plaintiffs in *Donovan* established with respect to cigarette smoke after the case returned to the federal court or, instead, that one can inhale asbestos and only possibly suffer subcellular change that

that the plaintiffs lacked expert evidence demonstrating specific causation, specifically, that "that exposure to PFOA from the [defendant's] facility caused [the plaintiffs to be exposed to] an increased risk of adverse health conditions, as opposed to whether it can do so in general." (Emphasis omitted; internal quotation marks omitted.) Id., 467. The court concluded that, although the plaintiffs' experts had not reviewed the "individual plaintiffs' medical records," summary judgment was inappropriate because "proof of causation must . . . be at the population level"; id., 467–68; and declined to grant summary judgment against any specific plaintiff because any individual issues could be resolved at the damages phase. Id., 469–70.

We conclude that *Sullivan* is distinguishable. First, the class in that case was limited to individuals "who actually demonstrate[d] increased levels of PFOA in their bloodstream," whereas the present case provides no such benchmark. Id., 462. Second, although the case before us was a class action when the trial court decided the summary judgment motion, the trial court expressly declined to certify the class on the issue of "the nature and extent of [each class member's] present or future need for medical monitoring . . . ." For these reasons, *Sullivan* is a case more appropriately decided by common proof, and we are not persuaded that it is applicable or persuasive here.

[19] Anwar did examine and treat Dougan as his pulmonary specialist, and, as a result, the affidavit does detail more specifically Dougan's exposure to asbestos and the accompanying harm. Dougan therefore would likely satisfy the subcellular injury requirement under the *Donovan* standard. But, as Dougan is no longer a party to the case; see footnote 1 of this opinion; we do not consider the affidavit's statements as to Dougan.

Dougan *v.* Sikorsky Aircraft Corp.

"substantially increase[s] the risk of serious disease, illness, or injury . . . ." *Donovan* v. *Philip Morris USA, Inc.*, supra, 455 Mass. 226; see also *Donovan* v. *Philip Morris USA, Inc.*, 268 F.R.D. 1, 16 (D. Mass. 2010) ("Indeed, subcellular harm, according to [the] plaintiffs, begins as soon as someone takes a single puff. . . . While the extent of the damage and risk may vary among class members, *allegedly twenty pack-years of smoking necessarily causes subcellular harm. . . .* I find their expert affidavits and depositions . . . sufficient on this point for class certification purposes." (Citations omitted; emphasis altered; footnote omitted.)). This ambiguity alone does not defeat summary judgment, however, because we construe the evidence in the light most favorable to the nonmoving party, and, therefore, we will read Anwar's conclusions about subcellular harm as applicable to all of the plaintiffs.

Nevertheless, we conclude that the plaintiffs have failed to present sufficient evidence as to certain other factors under *Donovan*, specifically, that "early detection, combined with prompt and effective treatment, will significantly decrease the risk of death or the severity of the disease, illness or injury," and that "such diagnostic medical examinations are reasonably (and periodically) necessary, conformably with the standard of care . . . ." *Donovan* v. *Philip Morris USA, Inc.*, supra, 455 Mass. 226; see *In re Marine Asbestos Cases*, 265 F.3d 861, 867–68 (9th Cir. 2001) (upholding summary judgment for defendants because plaintiffs did not "present sufficient evidence to raise a genuine issue of material fact as to the reasonableness and necessity" of medical monitoring, as plaintiffs "submitted no evidence that a single examination would yield any clinical benefit," and their expert affidavit "did not explain how patients would benefit from the single, baseline examination that [the] plaintiffs seek").

Dougan *v.* Sikorsky Aircraft Corp.

When discussing the expert testimony requirement in *Donovan*, the Massachusetts Supreme Judicial Court cited the Utah Supreme Court's decision in *Hansen* v. *Mountain Fuel Supply Co.*, supra, 858 P.2d 970. See *Donovan* v. *Philip Morris USA, Inc.*, supra, 455 Mass. 227. In *Hansen*, the Utah Supreme Court reversed the trial court's grant of summary judgment on the plaintiffs' medical monitoring claims and discussed the elements that a plaintiff must prove to establish such a claim. *Hansen* v. *Mountain Fuel Supply Co.*, supra, 972, 979. Although the *Donovan* elements are not identical to those in *Hansen*, there is significant overlap, and, as such, we look to the explanation in *Hansen* of how to prove medical necessity.[20]

The court in *Hansen* stated: "It also must be shown that administration of the [medical] test *to a specific plaintiff is medically advisable for that plaintiff.* To illustrate, a monitoring regime might be of theoretical value in detecting and treating a particular illness, but if a reasonable physician would not prescribe it for a particular plaintiff because the benefits of the monitoring would be outweighed by the costs, which may include, among other things, the burdensome frequency of the monitoring procedure, its excessive price, or its risk of harm to the patient, then recovery would not be allowed. . . . We emphasize that the advisable medical testing for a *specific plaintiff* must be shown to be 'consistent with contemporary scientific principles' and 'reasonably necessary.' '' (Citation omitted; emphasis added.) Id., 980; see also *Ayers* v. *Jackson*, supra, 106 N.J. 606 ("we hold that the cost of medical surveillance is a compensable item of damages [when] the proofs demonstrate, through reliable expert testimony predi-

---

[20] Medical necessity is demonstrated through the eighth element of *Hansen*, that the "[medical] test has been prescribed by a qualified physician according to contemporary scientific principles." *Hansen* v. *Mountain Fuel Supply Co.*, supra, 858 P.2d 979.

Dougan *v.* Sikorsky Aircraft Corp.

cated upon the significance and extent of exposure to chemicals, the toxicity of the chemicals, the seriousness of the diseases for which individuals are at risk, the relative increase in the chance of onset of disease in those exposed, and the value of early diagnosis, that such surveillance to monitor the effect of exposure to toxic chemicals is *reasonable and necessary*'' (emphasis added)); P. Lin, Note, ''Opening the Gates to Scientific Evidence in Toxic Exposure Cases: Medical Monitoring and *Daubert*,'' 17 Rev. Litig. 551, 582 (1998) (''[a]lthough claims for medical monitoring damages do not require proof of specific causation, the plaintiff's burden includes proof of medical necessity, which is similar to proof of specific causation in that it shows that the individual plaintiff can benefit from a program of medical monitoring'').[21] Requiring each plaintiff to prove ''reasonable necessity'' is vital, as the clinical suitability of medical monitoring must be established because, if such monitoring is unnecessary, recovery would be unwarranted.

The plaintiffs' argument that experts ''should not form any opinions about the plaintiffs' exposure and their need for medical monitoring . . . because that function should be reserved to the trier of fact'' is against the weight of persuasive authority.[22] This is the

---

[21] We need not address how the reasonable necessity requirement would operate in the context of a class action involving a claim for future medical monitoring. The plaintiffs were not certified as a class with respect to this issue, and the appropriate treatment of class based claims for medical monitoring is not presented in this appeal. See footnote 7 of this opinion. As a result, we conclude that each plaintiff in the present case must establish that medical monitoring is necessary under the *Donovan* test and leave for another day under what circumstances reasonable necessity may be proven for a class of plaintiffs.

[22] The plaintiffs also argue that experts should not opine as to ''the [plaintiffs'] likelihood of contracting diseases . . . .'' Certain courts that permit medical monitoring have expressly stated that they do not require a specific assessment or showing of the likelihood of contracting a particular disease in the future. See *Merry* v. *Westinghouse Electric Corp.*, 684 F. Supp. 847, 851 (M.D. Pa. 1988) (concluding that ''the plaintiffs . . . proffered sufficient evidence to defeat [the defendant's] summary judgment motion,'' even

Dougan *v.* Sikorsky Aircraft Corp.

very purpose of expert testimony in medical monitoring
cases. "[I]t is for the trier of fact to decide, *on the basis
of competent medical testimony*, whether and to what
extent the particular plaintiff's exposure to toxic chemi-
cals in a given situation justifies future periodic medical
monitoring." (Emphasis added.) *Potter* v. *Firestone
Tire & Rubber Co.*, supra, 6 Cal. 4th 1009. Expert testi-
mony limited to "generally inform[ing] lay jurors about
the scientific correlation between asbestos exposure
and the onset of asbestos related diseases," as the plain-
tiffs argue, is inadequate proof as a matter of law. In
the absence of expert testimony demonstrating the
necessity of future testing, a fact finder would be unable
to accurately conclude whether a plaintiff should
recover for medical monitoring. As the court in *Hansen*
noted, exposure alone does not provide a basis for
recovery, and proof of these elements, through expert
testimony, provides an important check on medical
monitoring. See *Hansen* v. *Mountain Fuel Supply Co.*,
supra, 858 P.2d 978, 980; see also *In re Paoli Railroad
Yard PCB Litigation*, 35 F.3d 717, 788 (3d Cir. 1994)
(acknowledging necessary limits on medical monitoring
claims, such as demonstrating that "a reasonable physi-
cian would prescribe for her or him a monitoring regime
different [from] the one that would have been pre-
scribed in the absence of that particular exposure"
(internal quotation marks omitted)), cert. denied sub

though "[t]he [plaintiffs'] experts have not provided, and in fact state they
cannot provide, a scientifically sound conclusion as to the precise degree
of risk faced by the plaintiffs"); *Potter* v. *Firestone Tire & Rubber Co.*, supra,
6 Cal. 4th 1008 (concluding that "recovery of medical monitoring damages
should not be dependent upon a showing that a particular cancer or disease
is reasonably certain to occur in the future"); *Hansen* v. *Mountain Fuel
Supply Co.*, supra, 858 P.2d 979 ("[b]ecause the injury in question is the
increase in risk that requires one to incur the cost of monitoring, the plaintiff
need not prove that he or she has a probability of actually experiencing the
toxic consequence of the exposure"). We agree with the plaintiffs that expert
testimony on that particular issue is not necessary in this particular context.

Dougan *v.* Sikorsky Aircraft Corp.

nom. *General Electric Co.* v. *Ingram*, 513 U.S. 1190, 115 S. Ct. 1253, 131 L. Ed. 2d 134 (1995).

Attached as an exhibit to their motion for summary judgment, the defendants provided an excerpt of Anwar's deposition testimony, in which he stated that he had not formed an opinion as to the plaintiffs. This admission establishes that there is no genuine issue of material fact as to whether medical monitoring is reasonably necessary for the plaintiffs. The plaintiffs attempted to counter the defendants' evidentiary showing with an affidavit from Anwar, but that affidavit does not offer an opinion as to the plaintiffs, individually or as a group. There is only one statement that may reasonably be construed as relevant to the plaintiffs' claims: "Other individuals who were exposed to asbestos during the demolition work at Sikorsky should be monitored for the early detection and intervention of an asbestos related disease, as asbestos inhalation causes a significantly increased risk of contracting a serious disease . . . ." The only fact that this statement establishes is that persons exposed to asbestos have a significantly higher risk of contracting an asbestos related disease and should be monitored. This statement does not speak to the reasonable need for the medical monitoring of the plaintiffs, and it is insufficient to overcome summary judgment. But see *In re Paoli Railroad Yard PCB Litigation*, supra, 35 F.3d 794–95 (concluding that plaintiffs had presented sufficient evidence to overcome summary judgment after experts testified that plaintiffs should receive medical monitoring due to their increased risk); *Rhodes* v. *E.I. du Pont de Nemours & Co.*, 657 F. Supp. 2d 751, 776 (S.D. W. Va. 2009) (expert opinion stating, inter alia, that "the plaintiffs have a significantly increased risk of disease as a result of their exposure . . . and that the increased risk warrants medical monitoring" raised question of material fact as to reasonable necessity), aff'd in part

Dougan *v.* Sikorsky Aircraft Corp.

and appeal dismissed in part, 636 F.3d 88 (4th Cir.), cert. denied, 565 U.S. 977, 132 S. Ct. 499, 181 L. Ed. 2d 347 (2011). In addition, the affidavit lacks any statement demonstrating that ''early detection, combined with prompt and effective treatment, will significantly decrease the risk of death or the severity of the disease, illness or injury,'' the fifth element required under *Donovan*. *Donovan* v. *Philip Morris USA, Inc.*, supra, 455 Mass. 226; see *In re Marine Asbestos Cases*, supra, 265 F.3d 867 (''the plaintiffs have not shown that a treatment exists for [asbestos related] diseases, or that there is clinical value to administering any such treatment before the onset of symptoms of these diseases'').

Even if we were to conclude that Anwar's affidavit was applicable to plaintiffs other than his patient, Dougan, the portions of the affidavit that could apply to the plaintiffs provide only bare assertions of the legal requirements of medical monitoring without providing the factual foundation supporting those assertions. In several places, the affidavit mirrors the language required to prove a medical monitoring claim in *Redland Soccer Club, Inc.* v. *Dept. of the Army*, 548 Pa. 178, 195–96, 696 A.2d 137 (1997). Specifically, the affidavit states that ''[o]ther individuals who were exposed to asbestos . . . at Sikorsky should be monitored . . . as asbestos inhalation causes a significantly increased risk of contracting a serious disease . . . . The monitoring regimen would be different from what is normally recommended in the absence of exposure . . . . [It] is reasonably necessary according to contemporary scientific principles, and the monitoring regimen makes early detection and intervention of an asbestos related disease possible.'' Although the affidavit does include detailed factual statements, those statements apply only to Dougan, who is no longer a plaintiff. Without additional details supporting the plaintiffs' individual needs

Dougan *v.* Sikorsky Aircraft Corp.

for medical monitoring, the plaintiffs have not raised a genuine dispute of material fact.

We have repeatedly held that such conclusory statements included in affidavits are insufficient to defeat a motion for summary judgment. See, e.g., *Stuart* v. *Freiberg*, supra, 316 Conn. 828 (discussing how statements in affidavits relied on by plaintiffs "closely replicate portions of the pleadings" and how "these averments are conclusory, and therefore inadequate to defeat a summary judgment motion"); *Coley* v. *Hartford*, 312 Conn. 150, 166 n.12, 95 A.3d 480 (2014) (concluding that expert's affidavit was conclusory and, therefore, did not demonstrate genuine issue of material fact to defeat summary judgment motion); *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, 259 Conn. 527, 557, 791 A.2d 489 (2002) ("[a]lthough an affidavit by an expert may be considered in opposition to a motion for summary judgment, conclusory affidavits, even from expert witnesses, do not provide a basis on which to deny such motions" (internal quotation marks omitted)). Anwar's affidavit does not provide any specific explanation as to why the plaintiffs require medical monitoring because of their asbestos exposure at Sikorsky.

As the expert in this case provided no opinion as to the plaintiffs, and in the absence of any other evidence demonstrating the reasonable necessity of medical monitoring, we conclude that the plaintiffs did not demonstrate a genuine issue of material fact. Accordingly, we conclude that the trial court properly granted summary judgment for the defendants.

The judgment is affirmed.

In this opinion the other justices concurred.